[Civ. No. 436.  Third Appellate District.—April 9, 1908.]

## E. S. LIGHT, Respondent, v. C. A. STEVENS (F. S. CROUCH, Substituted), as Administrator of the Estate of THEODORE A. LIGHT, Deceased, Appellant.

NEGOTIABLE PAPER—ACTION ON NOTE—ISSUE AS TO PAYMENT—PRODUCTION OF NOTE—PRIMA FACIE SHOWING.—In an action on a promissory note against the administrator of the deceased maker, where the only issue joined was upon the allegation of nonpayment, and the answer contained an affirmative plea of payment, the production of the note in evidence, containing no indorsement of any payment thereon, was a *prima facie* showing, sufficient to support a finding that the note had not been paid.

ID.—EVIDENCE TENDING TO PROVE PAYMENT OF NOTE—PRESUMPTION—ERROR IN STRIKING OUT EVIDENCE.—When it does not appear that there is any other indebtedness of the maker of the note in suit to the payee than such note, the evidence of a banker that, subsequently to the execution of the note, the maker drew certificates of deposit payable to the payee and drafts in his favor, all of which were cashed at the bank by the payee, and indorsed by him, and marked paid by the bank, and which were sufficient in amount to pay the note in full, and were all produced in court, is sufficient to raise the presumption of the payment of the note, and it was prejudicial error to strike out such evidence.

ID.—NEGOTIABLE PAPER AS PAYMENT—EXCEPTION TO RULE.—The general rule that negotiable paper does not constitute payment unless expressly received as such has no application to the exceptional case where the paper was indorsed by the payee and marked paid, and returned in due course to the drawer.

ID.—RULE OF PAYMENT IN SINGLE TRANSACTION OR INDEBTEDNESS.—Where there is but a single transaction to which a payment can be referred, the law necessarily appropriates it to that account, and to no other; and where the debtor pays or transfers to his creditor a sum of money equal in value to or greater than the indebtedness, the presumption arises that the transaction was intended to operate as a payment and satisfaction of the indebtedness.

ID.—OTHER INDEBTEDNESS NOT PRESUMED.—There is no presumption of the existence of an indebtedness other than the note proved; and, in the absence of any showing to the contrary, the payments proved must be presumed to apply only to the note.

ID.—INCONSISTENT DEFENSES—PAYMENT—COUNTERCLAIM—UNTENABLE OBJECTION.—The defendant may plead inconsistent defenses, and evidence applicable to the plea of payment may be so applied, notwithstanding an inconsistent plea of counterclaim to which it is

not applicable; and an objection that the testimony of the banker does not tend to prove any issue because it does not support the counterclaim is not tenable. Evidence offered must be considered, if applicable to any legal defenses pleaded.

ID.—SETTLEMENT OF STATEMENT—ORDER RELIEVING APPELLANT FROM DEFAULT—DISCRETION.—The court did not abuse its discretion in relieving the appellant from default upon settlement of the statement. Cases should be heard upon their merits; and an order setting aside a default should not be disturbed unless the rules of procedure imperatively demand it.

APPEAL from an order of the Superior Court of Napa County, denying a new trial. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Bell, York & Bell, for Appellant.

Lynch & Drury, and Raymond Benjamin, for Respondent.

BURNETT, J.—The action was brought to recover the sum of $3,000 and interest, alleged to be due upon a promissory note of decedent in favor of respondent executed April 15, 1902. All the allegations of the complaint are admitted except the one in reference to nonpayment, which is denied, and there is an affirmative allegation in the answer "that said promissory note was fully paid, satisfied and discharged by said intestate, Theodore A. Light, during his lifetime." The only question, then, on this appeal is, as stated by appellant, based upon said averment of full payment.

The plaintiff offered in evidence the promissory note described in his complaint, there being no indorsement of any payment thereon, and then rested his case. This was a *prima facie* showing sufficient to support a finding that the note had not been paid.

Thereupon, C. A. Stevens, subject to the objection of plaintiff, testified as follows: "I know that subsequent to this loan of $3000.00 which Theodore A. Light secured from his brother, Theodore A. Light paid money to his brother Eugene S. Light. On July 10, 1902, Theodore A. Light paid to E. S. Light, or deposited in my bank, subject to his brother's order, $1250.00. That was paid to him on December 9 of that same year. He cashed that certificate at the bank." The certificate was received in evidence. It was stamped on the

face: "C. A. Stevens, Banker. Paid Dec. 9, 1902, Calistoga, Cal." "On the back of this certificate appeared the signature of E. S. Light. I made out that certificate of deposit and delivered it to some one, I don't know to whom, but it was subsequently returned indorsed by E. S. Light, I think in December. Whereupon I marked it C. A. Stevens, Banker, paid Dec. 9, 1902, Calistoga, Cal." The witness further testified in a similar manner as to two other certificates for the aggregate sum of $1,408.65, and then: "On December 25, 1903, T. A. Light paid his brother, E. S. Light, $2,000.00. Theodore A. Light drew this money out of his regular account and obtained this draft, Dec. 28, 1903, which he mailed to his brother in San Francisco, who cashed it on December 30, 1903. The signature on the back of this draft is the signature of E. S. Light. The money for this draft was paid to Eugene S. Light by the Bank of California in San Francisco."

On cross-examination the witness testified that he did not remember whether he had seen Theodore Light deliver any of these drafts to Eugene S. Light; that he might have seen it and might not, but did not remember. "These drafts and certificates of deposit were issued for money deposited by T. A. Light and returned to the bank in regular order of business indorsed by E. S. Light. If he presented it to the bank I saw him sign his name on the back, but I could not swear that I saw him indorse them because I do not remember whether I did or not."

The court was thereupon moved to strike out the testimony of the witness on the ground that it was immaterial, incompetent and irrelevant, counsel specifying particularly that it was not connected with any issues of the pleadings, did not tend to establish a counterclaim, and was not connected with the promissory note in issue in the case. The court granted the motion, and instructed the jury that all the testimony of witness Stevens was eliminated from the case and was not to be considered.

This ruling of the court presents the vital question for our determination.

It is to be observed that in the direct examination Mr. Stevens testified positively that the money had been paid to the plaintiff, but the cross-examination discloses this to be the conclusion of the witness drawn from the fact that the checks and drafts, properly indorsed by the plaintiff, were returned

to the bank in regular order of business and credited as paid. If this circumstance affords any evidence of payment of the note, it is manifest that the action of the court was prejudicially erroneous. Respondent cites a large number of cases to the effect that "a note, check or draft given by a debtor to a creditor does not constitute payment, unless received by the creditor under an express agreement to accept it as absolute payment; and that the presumption is against it being so received." The doctrine as stated is supported by the authorities cited, and indeed is well settled, but it has no application to the case at bar, for the reason that we have the additional features shown by the testimony that the checks and drafts were indorsed by the payee and returned in due course to the drawee and marked paid. If the said bills had been in possession of plaintiff at the time the action was brought without any indorsement thereon, the ruling of the court would have been undoubtedly correct, but from the facts shown we think the presumption of payment would arise; and, therefore, that it was error to withdraw the evidence from the consideration of the jury. A paid bank check, payable to the order of the creditor and indorsed by him, is admissible as evidence of payment. (9 Ency. of Evidence, p. 725.) Payment of a bill or note will be presumed from possession after maturity by the party liable on it, especially if indorsed and canceled. (Randolph on Commercial Paper, secs. 1475, 1476.) After a bill has been circulated, its possession by the acceptor will be presumptive evidence that it is paid. (*Baring* v. *Clark*, 19 Pick. 220.)

The same conclusion follows from these presumptions of the code: "That a person in possession of an order on himself for the payment of money or the delivery of a thing has paid the money or delivered the thing accordingly," and "that the ordinary course of business has been followed." (Code Civ. Proc., sec. 1963, subds. 13, 20.)

Exactly the same principle is involved as where a note is in possession of the maker after maturity, and in the latter case no one would probably contend that payment would not be presumed. In *Griffith* v. *Lewin*, 125 Cal. 621, [58 Pac. 205], through Commissioner Cooper, it is declared: "It is said we must presume 'that the ordinary course of business has been followed.' If so, we must presume that if deceased in his lifetime ever paid the note in this case, that it was de-

livered up to him. If it had been delivered up to him, we would have to presume that it had been paid; but as it was not delivered up, but was at his death in the possession of plaintiff, we must presume that it has not been paid."

The question, then, arises whether the said bills were evidence of payment of the note in controversy. The record is silent as to that point, but there is no showing of any other indebtedness of decedent to plaintiff.

In *Murphy* v. *Richardson*, 33 Pa. St. 236, it is said: "There was no evidence of any other transaction, or of any other account, between Mr. Brick and the defendant and his wife, or either of them. When there is but one single transaction to which a payment can be referred, the law necessarily appropriates it to that account, and no other."

In *Masser* v. *Bowen*, 29 Pa. St. 128, 72 Am. Dec. 619, the rule is stated as follows: "A check by the defendant to the plaintiff's order, indorsed by him and paid, is evidence that the amount of it was paid to the plaintiff on account of such debt as we know to have existed, and it cannot be excluded because the court may think it belongs to a different transaction." To the same effect are *Jesse* v. *Davis*, 34 Mo. App. 353; *Boyd* v. *Daily*, 85 App. Div. 581, [88 N. Y. Supp. 539]; *Stevens & Andrews* v. *Gainesville Nat. Bank*, 62 Tex. 499.

In the American and English Encyclopedia of Law, volume 22, page 608, the rule is stated as follows: "Where a debtor pays or transfers to his creditor a sum of money or property equal in value to or greater than the indebtedness, the presumption arises that the transaction was intended to operate as a payment and satisfaction of the indebtedness."

Indeed, the conclusion that the money paid, in the absence of evidence to the contrary, should be applied to the indebtedness evidenced by the promissory note follows from these considerations: It is never presumed that one man is indebted to another. The presumption is otherwise. Hence, in the case at bar it must be presumed that the only indebtedness of the decedent to plaintiff is what was shown by the evidence. Again, it is presumed "that money paid by one to another was due to the latter." (Code Civ. Proc., sec. 1963, subd. 7.) Therefore, the inference necessarily is that the money was paid on the indebtedness in controversy.

Respondent insists that "the contention of appellant that three of these drafts were ever intended to apply as payment

on account of said promissory note is untenable, under the allegations of his answer that they were received by said E. S. Light from said Theodore A. Light for the former's use and benefit upon à promise and agreement to be returned to said Theodore A. Light upon demand, and there is no consistency between the pleadings on behalf of appellant and the argument advanced in his brief in reference to the three drafts.'' But it is clearly established that inconsistent defenses may be set up in an answer (*McDonald* v. *Southern Cal. Ry. Co.,* 101 Cal. 206, [35 Pac. 643] ; *Miles* v. *Woodward,* 115 Cal. 315, [46 Pac. 1076]) ; and the rule is the same when the answer is verified. (*Banta* v. *Siller,* 121 Cal. 418, [53 Pac. 935].) The effect of a denial in one defense is not waived by the setting up of affirmative matter in another defense. (*Billings* v. *Drew,* 52 Cal. 565.) In view of the foregoing it would be inexcusable to hold that evidence which tends to prove the averment of the answer that the amount of the note was paid must not be considered for that purpose, but must be rejected, because it does not lend support to another distinct count of said answer setting up a counterclaim. The fact is, of course, that evidence offered by defendant must be considered, if material and relevant to any legal defense that is pleaded.

Respondent claims that we should not consider the statement on motion for a new trial contained in the transcript, for the reason that the trial judge, over the objection of respondent, improperly settled it. We think, however, that there was no abuse of discretion shown by the order relieving appellant from his default. Causes should, if possible, be heard upon their merits, and an order setting aside a default should not be disturbed unless the rules of procedure imperatively demand it. We think the interests of justice require that there should be a new trial in order that all the evidence available may be considered in the determination of the important issue submitted.

The order denying the motion for a new trial is reversed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 4, 1908.